Clarence Leon HENSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 53S00–8603–CR–246.

Supreme Court of Indiana.

Nov. 9, 1987.

Robert W. Beck, Monroe County Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following a trial by jury, defendant-appellant Clarence Henson was convicted of burglary, a class B felony (Ind.Code § 35–43–2–1), and armed robbery, a class B felony (Ind.Code § 35–42–5–1). On this direct appeal, defendant presents three issues for review:

1. whether the trial court erred in admitting into evidence a witness's video-taped statement containing a reference to defendant's prior criminal record;

2. whether the trial court erred in denying defendant's motion for a mistrial following a state witness's implied reference to defendant's picture as one selected from a file of people who had been arrested;

3. whether the trial court erred in denying defendant's motion for mistrial or, alternatively, in failing to admonish the jury with regard to a state witness's reference to defendant's post-arrest, post-*Miranda* silence.

At approximately 2:20 a.m. on November 11, 1984, the defendant, accompanied by Rick Sinor, John Powell and Brad Hardy,

knocked on the door of the residence of Roger and Donna Hawley and sought entry on the pretense of needing to use the telephone. Mr. Hawley denied them entry. The men left, returned approximately ten minutes later, and again requested to use the telephone. When Mr. Hawley again denied them entry, the men kicked the door open. Defendant attacked Mr. Hawley and threatened him with a knife. Mrs. Hawley awakened and walked toward the living room whereupon another of the intruders grabbed her and threw her to the floor. Defendant and his companions then rummaged through the house, taking a stereo, radio, camera, money and marijuana. The men then fled to defendant's residence where they divided the stolen property. The Hawleys did not report the incident immediately for fear of being charged themselves with possession of marijuana.

In March, 1985, the Hawleys were arrested on drug related charges. During their interrogation, they related the burglary and robbery incident to police. Mr. Hawley subsequently identified defendant, Hardy, and Powell in a photographic array of possible suspects.

### Issue 1—Reference to Prior Record

■ Prior to trial, defendant sought, and the trial court granted, a motion in limine excluding any evidence regarding defendant's prior criminal history. During the trial, the prosecutor sought to place in evidence a videotaped statement of one of the perpetrators. The statement contained the following reference: "Yeh, she (defendant's girlfriend) knew we did [commit the robbery], and she told [defendant] that if he didn't straighten up he was going to go back to prison and all that stuff you know, ..." Defense counsel objected to the admission of the exhibits as follows:

I have no objection to the first several pages of this, Your Honor. They get into other matters toward the end not relating to this case which I would object to. But, I have no objection relating to anything in this case.

Defendant now contends that the trial court erred in admitting the exhibits into evidence because of the reference to defendant's criminal background.

We deem the issue waived for failure to raise a specific objection at the time the evidence was offered. *See Abner v. State* (1985), Ind., 479 N.E.2d 1254; *Goodman v. State* (1985), Ind., 479 N.E.2d 513; *Smith v. State* (1985), Ind., 475 N.E.2d 1139. Notwithstanding the waiver, we note that there was overwhelming evidence supporting the jury's determination of guilt in this case. In light of this, we find that the vague reference to defendant's prior criminal history, buried as it was in the context of the witness's lengthy statement, to be harmless beyond a reasonable doubt. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied,* (1986), — U.S. —, 106 S.Ct. 3311, 92 L.Ed.2d 723; *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

### Issue 2—Denial of Mistrial

On direct examination, Detective James Haverstock, the investigating officer, testified regarding the photographic array from which Mr. Hawley identified defendant. The following exchange occurred:

Prosecutor: Okay. And, did you show him photographs that included a photograph of the Defendant?

Witness: Yes, I did.

Prosecutor: And, can you describe how many photographs you showed him?

Witness: I used a standard line-up of six different photos.

Prosecutor: Okay. And, can you explain to the Jury just how you go about displaying a photo array to the witness?

Witness: Yes. We have what we call an Idmo-file. We keep a file of pictures of people we have arrested in the Bloomington Police Department and we ..

At this point, defense counsel objected and, out of the presence of the jury, moved for a mistrial due to the implied reference to defendant's prior criminal history. The trial judge denied the motion for mistrial, but ordered the response stricken and then admonished the jury. Defendant predicates

error on the trial court's ruling because of the undue prejudice resulting from the prosecutor's impermissible use of an "evidentiary harpoon."

██ We begin by noting that a trial judge has discretion to determine whether to grant a mistrial when improper evidence of past crimes is admitted. *English v. State* (1985), Ind., 485 N.E.2d 93. To prevail on appeal, defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected as a result of the admission. *Id.*

It is elementary that, absent exceptional circumstances, evidence of offenses not charged in the indictment or information is not only inadmissible, but prejudicial if admitted. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. "The volunteering by police officers of inadmissible testimony prejudicial to the defendant has been condemned time and again by both state and federal courts." *Id.* at 70–71, 272 N.E.2d at 315 (quoting *Gregory v. United States* (1966), D.C.Cir., 369 F.2d 185). Moreover, as Mr. Justice Jackson concurred in *Krulewitch v. United States* (1949), 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, 799, "The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction."

The prejudicial effect, however, does not necessarily require a new trial. In reviewing this issue, "we analyze whether the evidence was intentionally interjected despite its known inadmissibility, whether there was a serious conflict in the evidence, the degree to which the defendant was implicated by the evidence under scrutiny, and the trial court's admonishment to the jury." *English*, 485 N.E.2d at 95.

██ By denying the mistrial, the trial judge determined that the inadmissible information was not intentionally volunteered by the officer nor elicited by the prosecutor. The record does not compel us to find otherwise.

### Issue 3—Reference to
### Post-arrest Silence

Following Mr. Hawley's identification of defendant, Hardy and Powell in the photo-

graphic array, Hawley gave Detective Haverstock a list of names of men who he suspected of being the fourth robber. One of those men, Rick Sinor, was already incarcerated, thus Haverstock proceeded to question him. Sinor admitted his involvement and gave a full statement implicating defendant, Hardy and Powell. Haverstock subsequently contacted Hardy and had Hardy accompany him to the police station. Hardy agreed to talk, then admitted his participation and corroborated Sinor's statement. That same day, Powell was arrested and Haverstock interrogated him. The following exchange occurred during Haverstock's direct examination:

Prosecutor: Well, did John Powell confess to you that he committed any crime?

Haverstock: No, he did not.

Prosecutor: Did you have any, did you make any contact this time with the Defendant, Clarence Henson?

Haverstock: I can't recall the exact date, but yes, I did.

Prosecutor: Okay. Would you describe how that went?

Defense Counsel: I object to this as being a violation of *Miranda*, Your Honor.

Prosecutor: I don't think we've even gotten far enough to give an objection to anything.

The Court: I will overrule. You may continue.

Haverstock: Yes, I did.

Prosecutor: And, where was that contact made?

Haverstock: At the Monroe County Jail.

Prosecutor: And, did you interrogate him at the Monroe County Jail?

Haverstock: I was not given the opportunity.

Defense Counsel: Your Honor, I'll .. Well, I have no objection. We'll just let it roll.

Prosecutor: Did the Defendant refuse to be interrogated?

Haverstock: Yes, he did.

At this point, defense counsel objected and, out of the presence of the jury, moved for a mistrial based on the impropriety of admitting evidence of the defendant's exercise of his fifth amendment right to remain silent in response to custodial interrogation. The trial court denied the motion and refused to admonish the jury to disregard the question and answer.

Defendant relies on *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, in which the Supreme Court held that the use of evidence of defendant's silence following arrest and *Miranda* warnings, either for substantive or impeachment purposes, violates the due process clause of the fourteenth amendment. In *Doyle*, the convictions of two defendants were reversed based on portions of the prosecutor's cross-examination wherein he repeatedly asked the defendants about their failure to tell their exculpatory stories at the time of their arrest. Noting that post-*Miranda* silence is "insolubly ambiguous," the Supreme Court held that it would be fundamentally unfair to allow the post-*Miranda* silence to impeach the defendants' exculpatory explanation at trial because the *Miranda* warning carries with it an implicit assurance that silence will carry no penalty. *Id.* at 617–18, 96 S.Ct. at 2244–45, 49 L.Ed.2d 97–98.

The facts in this case fall between those in *Doyle* and those in *Greer v. Miller* (1987), 483 U.S. ——, 107 S.Ct. 3102, 97 L.Ed.2d 618, which rejected the application of *Doyle*. In *Greer*, the trial court sustained an objection to the only question that touched on defendant's post-arrest silence; no further questioning or argument occurred; the jury was admonished; and the prosecutor was not allowed to undertake impeachment on, or permitted to call attention to, defendant's silence.

Although the *Doyle* holding was directed to the prosecutorial use of a defendant's post-*Miranda* silence to attack his exculpatory story, it is obviously relevant on the question of whether error of constitutional dimension occurred here despite the fact that defendant declined to testify or present any exculpatory evidence in his own behalf.[1] The disputed question and answer here were improper and unwarranted. Although we disapprove of the prosecutorial tactic here, the question we must decide is whether it had the effect of producing a trial which was fundamentally unfair so as to deny defendant due process. We hold that the disputed question and answer did not have that effect.

An error of this type is harmless only when the court, after assessing the record as a whole to determine the probable impact of the improper evidence on the jury, can conclude beyond a reasonable doubt that the error did not influence the jury's verdict. *Williams v. Zahradnick* (1980), 4th Cir., 632 F.2d 353. *See Chapman v. United States* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. In *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied,* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349, this Court looked to the following five factors[2] to assist the analysis in determining whether a *Doyle* violation constitutes harmless error: 1) the use to which the prosecution puts the post-arrest silence; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence indicative of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

■ It appears from the record that at least one of the prosecutor's purposes may have been to suggest that if defendant was innocent, he would not have refused interrogation. It is also apparent that the trial judge had opportunity to admonish the

---

**1.** It is unclear from the record at what point, if ever, the *Miranda* warnings were given. It is clear that due process is not violated by evidence or reference to a defendant's post-arrest silence where *Miranda* warnings were not given. *See Fletcher v. Weir* (1982), 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490. In light of our conclusion in this case, we will assume, *arguendo,* that the *Miranda* warnings were given.

**2.** This list is not exhaustive or exclusive, of course, nor is it intended to be a universally applicable touchstone. *Williams, supra,* 632 F.2d at 362–63.

jury, yet declined to do so. We note, however, that the disputed question and answer were very brief in the context of the entire trial and, as indicated earlier, did not reflect on an exculpatory story. The record does not reveal a prosecutorial focus by repetitive questions or references to the defendant's silence as in *Doyle*. The prosecutor did not undertake impeachment on, nor did he call attention to, defendant's silence so as to undermine the fairness of the trial. In addition, we note again the overwhelming quantum of evidence supporting the guilty verdict in this case. Under the circumstances, we are persuaded that the disputed question and answer did not have an intolerable prejudicial impact. We conclude that the error was harmless beyond a reasonable doubt.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.