**Troy STEWART, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 82S00–8711–CR–01092.

Supreme Court of Indiana.

June 5, 1990.

David K. Robinson, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

A jury found appellant guilty of one count of criminal confinement, I.C. 35–42–3–3(a)(1), a class D felony, and one count of criminal deviate conduct, I.C. 35–42–4–2, a class B felony.[1] He received a four-year sentence on the confinement conviction and a fifteen-year sentence on the criminal deviate conduct conviction. The sentences were ordered to run consecutively, resulting in a nineteen-year executed sentence. Appellant raises four issues in this direct appeal.

The evidence produced at trial which tended to support the verdict showed that appellant was a city bus driver in Evansville and made the acquaintance of Larry Patrick, who frequently rode his bus. Through Larry, appellant met Larry's brothers, Randal and John Harp and Tim Patrick. Larry Patrick is mentally retarded and all three of his brothers suffer learning disabilities. On a few occasions, appellant took the brothers riding around in his car, out for hamburgers and cokes, and to his health spa. These excursions sometimes included Jonathon Davis, a friend of theirs who had also been identified by his school as a slow learner. Larry Patrick called appellant on July 19, 1986, to see if appellant would take them riding around. When appellant arrived at the Harp residence, Larry and Tim were outside with Jonathon Davis and another friend, Marion Marx (Mario).[2] Only Randal and Mario decided to go with appellant, and the three left with appellant driving.

Randal testified that appellant had a bottle of .151 proof Bacardi rum and several cans of beer in the car and that as they drove from Evansville to Carmi, Illinois, appellant stopped at a liquor store and bought a bottle of whiskey. All three shared the liquor, but Mario consumed most of the rum and a few of the beers, and Randal said Mario became so intoxicated that he spent a large part of the trip slumped against Randal's shoulder because he was unable to hold himself up. As they

1. I.C. 35–41–1–9 defines and describes sexual deviate conduct as "an act involving
    (1) a sex organ of one person and the mouth or anus of another person; or
    (2) the penetration of the sex organ or anus of a person by an object."
I.C. 35–42–4–2 sets out the circumstances under which the commission of sexual deviate conduct is a crime:
    A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:
        (1) the other person is compelled by force or imminent threat of force;

    (2) the other person is unaware that the conduct is occurring; or
    (3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given;
commits deviate criminal conduct, a Class B felony....

2. At the time of these events and at the time of trial, witnesses Randal Harp, John Harp, Jonathon Davis and Mario Marx ranged in age from fifteen to eighteen. Larry Patrick was twenty-three and appellant was forty-nine at the time of trial.

continued driving, appellant told Mario that he was sober if he did not have an erection. He reached over and stroked Mario's penis and asked him if it felt good, and he attempted to fondle Randal as well. Both boys testified that they pushed appellant's hand away. Upon their return to Evansville, the boys said their parents would be angry if they came home in their present condition, and the three went to appellant's house. Mario passed out and had to be carried by Randal and appellant into the house, where he was put into appellant's waterbed. Randal testified that appellant stripped Mario down to his underwear, telling Randal that this would cool him down and help sober him up quickly. The waterbed's waves made Mario sick, and he threw up and started choking. Randal cleaned Mario up, then went to sleep on another bed which was in the room.

Between 4:30–5:00 a.m. on July 20, Randal woke to Mario calling, "Help, Randy, get me out of here. I don't want to be a fagot [sic]. Help me, get me out of this weird house." Randal got up and turned on a light. He testified that appellant said, "Ah, he's okay, leave him alone." Randal saw that Mario's underwear had been pulled down to his knees and that appellant, dressed in his underpants and a tank top, was in bed with Mario and was "fingering, sticking his finger in Mario's anus, and playing with his penis." Randal testified that Mario tried repeatedly to get up, but appellant pulled him back down and that appellant had an erection and was trying to put his penis into Mario's anus. Randal told appellant to stop, whereupon appellant got out of the bed, put Randal in a headlock and threatened to break his neck if he said anything. Randal slipped away from appellant and pushed him against the wall and got ready to hit him. During this scuffle, Mario got out of bed, dressed, and left.

Randal and his mother testified that they saw Mario later in the day and that he told them that he was sore and had been bleeding and that he had a tremendous headache. Mario testified that, due to the extent of his intoxication, he had only a disjointed recollection of the incident, that, in fact, he had thought and hoped that the whole thing might have been a nightmare until Randal asked him if he remembered what had happened to him.

## I.

Appellant's first claim on appeal is that the trial court erred in admitting evidence concerning prior acts of misconduct between appellant and State's witnesses. Randal and John Harp, Larry Patrick, and Jonathon Davis testified that some days before the incident at issue here, appellant had taken the four of them to the spa. The boys were walking around the whirlpool dressed in towels, and appellant, who was sitting naked in the whirlpool, asked them if they were afraid to show their penises. Larry testified that at that time appellant tried to grab at Jonathon. Randal Harp and Larry Patrick testified that they rode in the front seat of appellant's car on the way home and that, during the drive back, appellant had put his hand on Randal's leg and tried to move it up to his penis. Both testified that he stopped when Randal knocked his hand away. John Harp testified that on one occasion when he and his brothers had been out with appellant in his car, appellant had given him alcohol to drink and then had him rub onions from a fast-food order on his shirt to disguise the smell. John testified further that he had been alone with appellant in his house a few days before July 19 and that appellant gave him some .151 Bacardi and asked John to go into his bedroom so he could show John a good time. Appellant also told John at that time that he had had sexual intercourse with Tim Berta, an acquaintance of John's. Randal, Larry and Jonathon testified that when appellant drove up on July 19, he asked Tim Harp and the others if they "screwed." He then said he and the boys were going to have a good time and showed them the bottle of .151 Bacardi he had with him. He also told Jonathon Davis that he liked guys with long legs like Jonathon's that could wrap around him.

The trial court also admitted the testimony of Tim Berta, a twenty-four-year-old

retarded man, who testified that he had met appellant while riding appellant's bus. Appellant took Berta out for meals and to his health club, and he arranged with Berta's group home to be his volunteer sponsor, which allowed appellant to take him on overnight excursions. Berta testified that on one of these occasions, appellant told him to go into the bedroom and take his clothes off. Berta said he did not want to, and appellant's response was "Why not?" Berta continued to express his reluctance, to which appellant uniformly replied, "Why not?" Ultimately, both men disrobed and appellant performed fellatio on Berta and then requested that Berta do the same to him. When Berta hesitated, appellant again challenged him with "Why not?" and Berta complied. The men then performed anal intercourse upon each other after appellant told Berta to do it. Berta testified that several times after this, he and appellant engaged in oral and anal intercourse in appellant's house and car.

■ Appellant contends that all of this evidence was erroneously admitted in that it was offered solely to prejudice him in the eyes of the jury and did not come within any of the exceptions to the general prohibition against the admission of evidence of uncharged misconduct. As a general rule, evidence of past misconduct is inadmissible. *Jarrett v. State* (1984), Ind., 465 N.E.2d 1097. This rule is subject to certain, discrete exceptions, one of which being that evidence of certain kinds of prior sexual conduct is admissible under the depraved sexual instinct exception. *Id.* This exception has been carved out of the general rule because "[a]cts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character," *Kerlin v. State* (1970), 255 Ind. 420, 424, 265 N.E.2d 22, 25 (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir. 1948)), and to lend credence to a victim's accusations or testimony which describe acts which would otherwise seem improbable standing alone. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229. The ultimate test of admissibility is whether or not the evidence of prior misconduct actually has

that particular relevance, signified by the legal labels of each category of exception, which relevance is deemed to outweigh the tendency to prejudice the fairness of the proceeding.

■ The testimony of all the witnesses with regard to uncharged acts had that quality of relevance rendering it admissible under the depraved sexual instinct exception. The uncharged acts being offered need not be identical to the acts charged; it is sufficient if the same sexual instinct is involved. *Jarrett*, 465 N.E.2d at 1100 (charged and uncharged acts involved homosexual advances and activities and minor victims). Here, all but one of the targets of appellant's homosexual advances were minors. Further, the charged and uncharged acts were similar in time and proximity in that the advances toward the teenage boys were committed within a week or two of the charged acts, and all of the physical overtures, including the acts of intercourse with Tim Berta, were all committed either in appellant's car or his home. *See Hodges v. State* (1988), Ind., 524 N.E.2d 774.

Appellant objected with particular vehemence to the admission of Tim Berta's testimony and, prior to trial, the court conducted an extensive hearing on this issue. Both sides focused their arguments primarily on whether the sexual acts between appellant and Berta violated the criminal deviate conduct statute. The court heard expert testimony on Berta's intellectual and emotional development and functional abilities, ruled that Berta did not have the capacity to consent to the acts within the meaning of the statute, and admitted his testimony under the depraved sexual instinct exception. This was not error. In *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, this Court ruled that evidence of a prior conviction for rape of an adult woman was admissible in a prosecution for child molesting which included acts of sexual deviate conduct under the depraved sexual instinct exception because the commission of both crimes exhibit a sexual aggression toward females marked by overpowering force or intimidation and the engendering of fear in the victim. The instinct that is

evidenced by this sort of conduct is not only a proclivity toward certain sexual practices, but also an unrestrained inclination to assert one's power and dominion, physical or psychological, over another person to the exclusion of any exercise of that other person's will. Here, the trial court found the same kind of overbearing of the will to be present in this case and properly admitted Berta's testimony.

## II.

■ Appellant's second claim on appeal is that the trial court erred in allowing Veltri Taylor, a psychologist at Tim Berta's group home, to testify that, in her opinion, Berta's testimony relating his experiences with appellant was trustworthy. Appellant's assertion is correct, and his convictions must be reversed.

■ No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth. *Shepherd v. State* (1989), Ind., 538 N.E.2d 242. In the context of child molesting, however, this Court has recognized that where children are called upon to describe sexual conduct, a special problem exists in assessing credibility since children often use unusual words to describe sexual organs and their function and since they may be more susceptible to influence. Therefore, testimony is allowed which permits

> some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions ... facilitate an original credibility assessment of the child by the trier of fact. ...

*Lawrence,* 464 N.E.2d at 925. These adult witnesses are allowed to state an opinion as to the child's general competence and ability to understand the subject, *Settle v. State* (1988), Ind., 526 N.E.2d 974, but are prohibited from making direct assertions as

to their belief in the child's testimony, as such vouching invades the province of the jury to determine what weight to place on the child's testimony. *Head v. State* (1988), Ind., 519 N.E.2d 151.

■ Accrediting testimony by adults is allowed because in cases where a child is the purported victim of a sex crime, "[t]he child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue...." *Lawrence,* 464 N.E.2d at 925. The same credibility problem can be said to exist where the alleged victim is mentally retarded because, when called as a witness, that person may experience similar difficulties in interpreting gestures and in describing sexual conduct. Therefore, the same kind of accrediting testimony is allowed to enable the jury to make its original assessment of that witness's credibility and the same prohibition against vouching for the witness's veracity applies.

■ Here, the prosecutor asked Taylor, "[D]o you have reason to believe that Tim Berta's allegations of homosexual conduct with the Defendant, Troy Stewart, tend to be trustworthy in your opinion?" Over appellant's objection, the trial court permitted Taylor to respond, "In my opinion, I felt like it could be considered trustworthy," and to expound on her reasons for believing his story. This is precisely the kind of vouching testimony which is prohibited, and the trial court committed reversible error by allowing its admission.

## III.

■ Appellant's third claim on appeal is that there was insufficient evidence to support his conviction on the criminal deviate conduct count.[3] In order to sustain a conviction, the State must prove the existence of every material element of the charged crime beyond a reasonable doubt. *See Burris v. State* (1984), Ind., 465 N.E.2d

---

**3.** Part of this claim of error consists of a claim that Randal Harp's testimony is inherently unreliable based on discrepancies between his trial testimony and a deposition given prior to trial. Appellant also contends that Randal's testimony was not worthy of credit because of testimony elicited on cross examination which probed

Randal's assessment of his own prowess on the football field and his expectations for success in that endeavor at the college and professional levels. Appellant also attacks Randal's credibility by highlighting his testimony that rather than leaving appellant's house when Mario did, Randal went back to sleep, confident that appellant

171. Appellant argues that the State failed to satisfy its burden to show that his actions violated the statute under which he was charged and that therefore his conviction under the statute must be vacated. *Pennington v. State* (1981), Ind., 426 N.E.2d 408. The criminal deviate conduct statute prohibits sex acts involving the sex organ of one person and the mouth or anus of another and sex acts in which the sex organ or anus of a person is penetrated by an object in the absence of the consent of one of the participants.[4]

Appellant argues that the insertion of his finger into the anus of Mario Marx does not violate the prohibitions of this statute because a finger is not an "object" within the meaning of the criminal deviate conduct statute. In support of this argument, appellant starts with the Webster's dictionary definition of "object" and traces back through the definitions of the terms defining that word, ultimately arriving at the conclusion that an object must, of necessity, be inanimate. According to appellant's brief:

> "Inanimate" is defined as "not animate, not endowed with life or spirit, lacking consciousness or power of motion, not animate or lively".... Mr. Stewart's finger was allegedly very lively, thus, not inanimate, thus not a thing, thus not an object and thus the crime of deviate conduct was not and cannot be committed with a finger.

Even assuming that this argument constitutes sound linguistic analysis, it is not a proper framework for statutory construction. Where statutory terms are open to interpretation and alternate meanings are available, the meaning of the term which is compatible with the letter and intent of the law should be applied. *City of Evansville v. International Ass'n of Fire Fighters*

*Local* (1987), Ind., 516 N.E.2d 57. Further, it is not to be presumed that the legislature intended to do an absurd thing. *State ex rel. Hatcher v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737.

The harm to be prevented by the criminalization of penetration of a person's sex organ or anus by an object, in addition to any physical injury which may result, is the subjection to the personal indignity and degradation and the affront to physiological integrity associated with an unconsented to violation. Further, it is unlikely that the legislature would criminalize sexual assaults committed by means of sex organ, mouth, or inanimate object, yet condone such assaults if committed by means of a finger or hand. An unconsented to intrusion by whatever instrumentality chosen by the perpetrator to employ, whether animate or inanimate, is prohibited by the statute. There was sufficient evidence that, by inserting his finger into the anus of Mario Marx, appellant committed the crime of criminal deviate conduct.

## IV.

Appellant's fourth claim on appeal is that the sentence imposed by the trial court was manifestly unreasonable. Because of the resolutions of the foregoing issues, however, consideration of this claim is unnecessary.

Appellant's convictions are reversed and this cause is remanded to the trial court for a new trial on both counts in a manner not inconsistent with this opinion.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.

---

would not try anything with him because he "could handle" appellant and by pointing out that Randal accepted five dollars from appellant not to tell anyone about this incident. All of this information was before the jury, and it was the jury's responsibility to evaluate Randal's credibility and to assign the weight to be given his testimony. On appeal, this Court will not impinge on this responsibility unless confronted with testimony of "inherent improbability," or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity." *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090, 1092. We do not find the challenged testimony to be of such character and therefore will not override its acceptance by the jury.

4. *See supra* note 1 for the full texts of I.C. 35-41-1-9, which defines sexual deviate conduct, and I.C. 35-42-4-2, which sets out under what circumstances it is criminalized.