**Lawrence J. McCOY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A04–8907–CR–00312.[1]**

Court of Appeals of Indiana, Fifth District.

June 25, 1991.

**1.** This case was reassigned to this office on    January 2, 1991.

William D. McCarty, Anderson, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

A jury convicted Lawrence J. McCoy (McCoy) of two counts of child molesting (Class D and Class C felonies)[2] for which

**2.** Ind.Code § 35–42–4–3(c), (d).

he received consecutive sentences of two and six years, respectively.

McCoy raises nine issues on appeal, which we combine and recast as follows:

(1) whether McCoy was denied a fair trial due to the prosecutor's questions and closing comments concerning McCoy's "resist[ance]" to taking a sterility test, as well as other statements made during closing argument;

(2) whether sufficient evidence supported the jury's decision; and

(3) whether the sentences were manifestly unjust.

We affirm.

The facts read most favorably to the state reveal that in November, 1988, 15 year-old WDW was found naked, hiding in the closet of a bedroom in a trailer home in Louisiana which she shared with McCoy. WDW told a Louisiana policeman that she and McCoy, a 41 year-old married man, had been sexually intimate for approximately a year in Indiana and also during the few days they were in Louisiana. WDW reported that she had left Indiana with McCoy of her own accord. McCoy also admitted to Louisiana police that he had had a sexual relationship with WDW for about one year.

After she returned to Indiana, WDW told Officer Koons, a police officer specializing in child abuse cases, that she and McCoy first had a sexual encounter in November of 1987 at which time they touched each other "everywhere" while undressed, but did not have sexual intercourse. She was 14 years old at the time. WDW disclosed that approximately two weeks later, she had intercourse with McCoy and their sexual activity continued for a year. The next day, WDW retracted her statement.

The amended information, Count I, charged that "[a]t various times from on or about the 14th day of November, 1987, to on or about the 20th day of November, 1988, in Madison County, State of Indiana, the Defendant, ..., who was at least sixteen (16) years of age, did perform and submit to fondling and touching with [WDW], a child who was a[t] least twelve

(12) years of age but under sixteen (16) years of age, ..., with the intent of arousing [his] sexual desires...." Count II charged that during this same period McCoy "did perform sexual intercourse with [WDW]."

## I.

■ The first issue stems from the trial court's denial of the State's motion to compel McCoy to take a sterility test. The Friday before trial, the State so moved in order to corroborate the victim's retracted statement that, despite having sex with McCoy for over a year, she was not afraid of becoming pregnant by McCoy because he was "impotent" and could not father children. The court denied the State's motion on fourth amendment grounds.

At trial, defense counsel raised the issue of McCoy's sterility by asking McCoy's wife whether she had been pregnant by McCoy. She confirmed that two pregnancies had ended in miscarriages. McCoy testified in his own defense, and on cross-examination, the following exchange occurred:

Q. It is a fact, Mr. McCoy, that the State has sought to have you medically examined to determine whether or not you're sterile?

A. I've heard that....

(Objection by defense counsel and ensuing discussion)

. . . .

Q. Is it also a fact that you, through your attorney, resisted that examination?

A. Yes, sir.

*Record* at 726–27.

■ The trial court erred in permitting the prosecutor to pursue this line of questioning. Although a trial judge has wide discretion to determine the "scope and extent of cross-examination," *Jaske v. State* (1990), Ind.App., 553 N.E.2d 181, 186, *trans. den.; Johnson v. State* (1988), Ind., 518 N.E.2d 1073, the prosecution cannot introduce evidence of a defendant's exercise of his constitutional rights in order to impeach the defendant or invite the jury to infer the defendant's guilt from the exer-

cise of those rights. *See, e.g., Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (impeachment by using defendant's post–Miranda silence unfair); *Sulie v. Duckworth,* 864 F.2d 1348, 1356 (7th Cir.1988), *cert. denied,* — U.S. —, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989) (use at trial of post–Miranda request for counsel violated due process); *but see Cook v. State* (1989), Ind., 544 N.E.2d 1359, 1363 (comment on exercise of fifth amendment impermissible, comment on request for counsel permissible); *Dack v. State* (1985), Ind.App., 479 N.E.2d 96, 97, *reh. den., trans. den.,* (direct or indirect comment "on the accused's exercise of his rights" not permitted).[3]

Having determined the trial court erred in permitting the foregoing line of questioning, we turn to whether the error was harmless. "Improper questioning ... may be deemed harmless error ... if the court, after assessing the record as a whole to determine the probable impact of the improper evidence on the jury, concludes beyond a reasonable doubt that the error did not influence the verdict." *Heyward v. State* (1988), Ind.App., 524 N.E.2d 15, 19. Among the factors to be addressed in this analysis are:

1) the use to which the prosecution puts the [assertion of a constitutional right]; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

*Henson v. State* (1987), Ind., 514 N.E.2d 1064, 1067.

■ We conclude that neither the prosecutor's questions,[4] nor his comments in closing (which were not objected to), improperly influenced the jury's verdict as to Count II involving sexual intercourse. We hasten to add, however, that we do not condone the prosecutor's conduct in this regard.[5]

Like the prosecutor in *Henson,* who questioned a police officer about the defendant's "refus[al] to be interrogated," the prosecutor here used the questions to McCoy and comments in summation "to suggest that if defendant was innocent, he would not have refused" to take the test. *Id.* But the connection between a request to take a sterility test and guilt of child molesting is tenuous at best. *See Pointon v. State* (1980), 274 Ind. 44, 55, 408 N.E.2d 1255, 1262 ("the mere fact that a place has been searched is not evidence at trial since it does not tend to prove or disprove a material fact"). This was a collateral issue on Count II (the intercourse charge) and not relevant at all to Count I (the touching and fondling charge). The less material the issue, the less likely it taints a jury's decision. *See, e.g., Cook v. State* (1989), Ind., 544 N.E.2d 1359, 1362 (while tangible evidence was admitted erroneously, the error was harmless; since testimony was more damaging than the tangible evidence, the evidence was "essentially immaterial to

---

**3.** The prosecutor's questions are similar to an improper evidentiary harpoon, that is "the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jury against the defendant." *McDonald v. State* (1989), Ind., 542 N.E.2d 552, 554; *see also Riley v. State* (1986), Ind., 489 N.E.2d 58, 61.

**4.** McCoy also argues that the court erred in overruling his objection to the prosecutor's question of whether WDW knew that her mother had told defense counsel that he could not interview her daughter. *Record* at 375–82. We fail to see the error or the prejudice to McCoy as a result of this question; consequently, we find that the trial court did not abuse its discretion in overruling the objection.

**5.** Among the prosecutor's comments in closing were:

[The defendant] doesn't have to produce any evidence ... but he has the right to. He could've on his own initiative brought in the evidence of that [sterility] exam and presented it to you.... He could have simply told [his attorney] "I want to submit to a physical examination so I can take that issue out of the case and the prosecutor can't say nothing (sic)" but he didn't. Not only did he not do that but you've heard the testimony of the defendant and you've seen the exhibit that [his attorney] submitted which indicates that when the state attempted to have that issue resolved, the defendant resisted. You can consider that.

*Record* at 798–99.

the issue of Cook's guilt" and "probably peripheral to the jury's judgment").

In addition, the defense, not the prosecution, first introduced evidence of McCoy's sterility by asking his wife whether she had ever been pregnant by McCoy. Nor did the prosecutor repeatedly bring up McCoy's failure to take the sterility test. He asked only one question regarding McCoy's "resist[ance]" to the test, and mentioned the issue in closing once.

Moreover, the amount of evidence supporting defendant's guilt excluding the prosecutor's questions and comment, as discussed in the following section, demonstrates that the jury could not have been influenced by the impermissible tactics. In sum, because we are convinced that the prosecutor's questions and comment regarding the sterility test, while constitutional error, did not effect the jury's verdict, we find them harmless error.

McCoy further contends that comments made by the prosecutor during closing argument represent prosecutorial misconduct. *See Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. McCoy, however, failed to object to any portion of the State's closing argument and now argues that this Court should nonetheless review the claim under the fundamental error rule. *Jester v. State* (1990), Ind., 551 N.E.2d 840, 843 (defense counsel's failure to object during closing argument results in waiver, but issue can be reviewed if it constitutes fundamental error). McCoy alleges that the prosecutor: misstated facts; called McCoy not credible because, as the defendant, he "ha[d] a reason to fabricate"; misstated the law; inflamed the jury by inferring that the case involved parental rights; and invited the jury to consider the fact that McCoy did not submit to a physical examination or produce evidence of his sterility.

The *Maldonado* test is a two-step inquiry. First, McCoy must show improprieties under case law or canons of conduct; McCoy must then prove prejudice, or "grave peril." 265 Ind. at 498–99, 355 N.E.2d at 848. A prosecutor's comments can be prejudicial if they have an impact "on the jury's ability to judge the evidence

fairly." *Gasaway v. State* (1989), Ind. App., 547 N.E.2d 898, 902, *reh. den., trans. den.*

However, this Court can only examine the alleged misconduct under the fundamental error standard since the error was not preserved at trial. Thus, McCoy must demonstrate that this "grave peril" denied him due process. *Ward v. State* (1988), Ind., 519 N.E.2d 561. "Only when the record reveals clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied, will this Court review an issue not properly raised and preserved." *Northern v. State* (1986), Ind., 489 N.E.2d 520, 521.

▮ There is a fine line between vigorous advocacy in closing argument and impermissible conduct. We will address what we perceive as the most serious of McCoy's assertions: that the prosecutor misstated the law. The prosecutor argued that McCoy's (and WDW's) admission that he kissed her "by itself [was] enough to obtain a conviction for the fondling or touching." *Record* at 781. However, kissing on the neck even coupled with removal of clothing is *not* sufficient to support a conviction for child molesting by fondling and touching because the intent element is not met. *De-Bruhl v. State* (1989), Ind.App., 544 N.E.2d 542, 546.

Because *DeBruhl* was decided after McCoy's trial, it cannot be said that the prosecutor *purposefully* misstated the law. *See* Ind.Professional Conduct Rule 3.3(a)(1) (which prohibits the knowing, false statement of law to the tribunal). Assuming the prosecutor misstated the law at the time of the trial, McCoy satisfied the first prong of the *Maldonado* test. The crux of the matter is whether McCoy was prejudiced by this misstatement.

We begin with the maxim that "final instructions would be presumed to correct any misstatements of law made during final argument." *Barnes v. State* (1982), Ind., 435 N.E.2d 235, 242. While the instructions did not define "fondling" and "touching," the jury need not leave its common sense and common knowledge of terms at the jury room door. In addition,

the court did instruct the jury that "[t]he instructions of the court are the best source as to the law applicable in this case," that the jury "must consider all the instructions as a whole," and that the State must prove every element of each offense "beyond a reasonable doubt." These instructions cured the prosecutor's misstatement of the law.

Moreover, the jury obviously considered and believed WDW's statements to Louisiana and Indiana police over her in-court testimony, since the jury convicted McCoy of Count II (intercourse). If the jurors believed WDW's statements as to her sexual relationship with McCoy, that alone, not their admissions that they kissed, could form the basis for the conviction on Count I. Thus, we cannot say that the prosecutor's invitation to the jury to convict McCoy based solely on the prosecutor's statement lessened the jury's ability to weigh the evidence such that he was denied a fair trial.

Because we find that the other closing statements now raised by McCoy did not amount to misconduct, we need not address their impact on the jury.

## II.

McCoy next asserts that the evidence was insufficient to convict him. In reviewing a claim of sufficiency of the evidence our standard of review is well settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom, and if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Litel v. State* (1988), Ind., 527 N.E.2d 1114.

■ Because this case involves WDW's two recanted statements, our judgment that the prosecutor's actions did not influence the jury is a close call. First, recanted hearsay statements can be admitted as substantive evidence, so long as the person making them is available for cross-examination at trial and does not deny making them. *Patterson v. State* (1975), 263 Ind.

55, 324 N.E.2d 482. In addition, there must be "substantial evidence of probative value," either direct or circumstantial, that a jury can use to credit a witness' out-of-court statements over her in-court testimony. *Peckinpaugh v. State* (1983), Ind. 447 N.E.2d 576, 578–79 (*citing Watkins v. State* (1983), Ind., 446 N.E.2d 949).

■ We find that substantial evidence of probative value supports the jury's conclusion that WDW's prior statements were true. When Louisiana police officers found WDW, she was naked and hiding in a bedroom closet. Neither McCoy nor the child denied this fact. One officer testified that he heard noise coming from the area of this bedroom before McCoy, dressed in unzipped blue jeans, answered the door. The officer also stated that the bed in the room where the girl was found looked as if it had been occupied by two people.

He further testified that McCoy admitted having sex with the child for a year. A second Louisiana police officer testified that WDW had told him she had had sex with McCoy in Indiana and Louisiana. Thus; WDW's first statement was consistent with McCoy's statement. Moreover, the state of undress in which the parties were found supports the veracity of these statements, not the later repudiations.

When WDW returned to Indiana, she gave a similar statement to Officer Koons. This interview was videotaped and later admitted into evidence; thus, the jury had the opportunity to judge WDW's credibility at the time she gave the statement by considering her demeanor, candor, and recitation of details of her relationship with McCoy.

WDW retracted her statement to Officer Koons the day following the video taping. The police officer testified that he did not believe this retraction because, in his experience, a child might recant once she realized that the molester could get into trouble due to her telling what happened. WDW and McCoy, in letters to each other and in testimony at trial, indicated they "loved" one another. WDW testified that she saw Officer Koons a second time be-

cause she "wanted to tell him that nothing happened" and she "remember[ed] we never done (sic) anything." *Record* at 413, 438. The jury reasonably could find that WDW, being infatuated with McCoy and not wanting to see him in prison, lied at trial.

Other circumstantial evidence included the testimony of the victim's friend who saw McCoy kissing her and averred that WDW called the married McCoy her "boyfriend." Further, the testimony of a physician who had performed a gynecological examination of WDW and concluded that the physical evidence supported that she had experienced sexual intercourse buttresses the jury's finding. Substantial evidence of probative value therefore supports the jury's rejection of WDW's trial testimony in favor of her recanted pretrial statements.

■ As discussed at length, the jury reasonably could believe WDW's statements to Louisiana and Indiana police in which she stated that she and McCoy had engaged in sexual intercourse and fondling for over a year. A victim's uncorroborated testimony is sufficient to support a conviction. *See Morrison v. State* (1984), Ind., 462 N.E.2d 78, 79; *Bennett v. State* (1980), Ind.App., 409 N.E.2d 1189, 1191. Here, given the physician's testimony that WDW had most likely experienced intercourse, and McCoy's initial statement to Louisiana police that he had had sexual intercourse with WDW for a year, corroborate the victim's statements. The evidence was sufficient to convict McCoy of these charges.

### III.

Lastly, McCoy argues that his sentence was manifestly unjust for three reasons: it was excessive, the aggravating factors were not supported by the evidence, and the trial court improperly imposed consecutive sentences. We remain unpersuaded.

McCoy received a two-year sentence for the fondling charge (the presumptive sentence for a Class D felony) and six years on the sexual intercourse charge (one year more than the presumptive sentence for a Class C felony). The sentences were ordered to run consecutively.

■ McCoy first contends that none of the matters cited by the trial court as aggravating factors were valid, so that neither the enhanced Class C sentence nor consecutive imposition of the sentences were proper. We first note that the trial court retains wide discretion to enhance a presumptive sentence, *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905, can use the same aggravating factors to both enhance sentences and impose them consecutively, *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 521, and is not limited to using only the statutory aggravating factors to enhance a sentence. *Johnson v. State* (1989), Ind., 537 N.E.2d 1191, 1193.

■ The trial court increased McCoy's sentence based on one statutory factor—that a lower sentence would have depreciated the severity of the crime—and several non-statutory factors. The one statutory factor was sufficient. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071, 1072. The other factors cited by the court included: that McCoy took the victim out of state without her parents' consent and without ever informing them where or how she was; that McCoy continued to see the girl after his arrest in Louisiana and continued to communicate with her after being arrested and held in the Madison County jail before trial; that the sexual contact continued for a year; and that the victim was immature and 14 years of age when the molestation began.

■ We disagree with McCoy that the trial court impermissibly included the age of the victim as an aggravating factor. As we read the record, the court noted the victim's immaturity and cited the age at which the molestation began not so much as an aggravating factor itself, but to emphasize the length of time that the molestation continued.

Further, the trial court noted that the punishment would have been more severe but for the mitigating factors of McCoy's military service and lack of a criminal record.

In short, the trial court adequately set out in the record its reasons for enhancing the Class C sentence and ordering the two sentences to run consecutively. The sentences are not manifestly unreasonable such that no reasonable person could find an eight year prison term appropriate for a 41 year-old man who molested a 14 to 15 year-old girl for over a year.

Judgment affirmed.

CHEZEM and CONOVER, JJ., concur.