Richard E. **DIETRICH**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 45A04–9403–CR–122.

Court of Appeals of Indiana,
Fourth District.

Oct. 27, 1994.

Marce Gonzalez, Crown Point, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

### *OPINION*

RATLIFF, Senior Judge.

#### *STATEMENT OF THE CASE*

Richard E. Dietrich appeals his conviction of child molesting[1] as a class D felony and

---

1.  Ind.Code 35–42–4–3.

attempted child molesting [2] as a class C felony. We affirm.

## ISSUES

I. Whether testimony of the victim's mother was accreditation testimony improperly vouching for the credibility of the victim's testimony.

II. Whether Dietrich's right to remain silent was violated by a police officer's testimony.

## FACTS

S., the victim, was thirteen years old and lived with her mother and brother. Holly had known S. nearly all her life and for many years had babysat for S. and her brother; Holly was nineteen or twenty and lived across the street with her mother. Dietrich was Holly's nineteen year old boyfriend, temporarily living with Holly.

On a Monday evening in April, 1993, Dietrich was at S.'s home for a birthday party. When Dietrich was left alone with S. and her brother, he sat next to S. on a couch and tried to kiss her. The next morning, Tuesday, Dietrich called S. and asked that she bring his hat and a videotape across to Holly's. After S. was in Holly's home, Dietrich pulled S. onto the couch, lay on top of her, kissed S. and touched her vaginal area with his hand. Dietrich was in S.'s home Wednesday evening. After S.'s mother had left for work and while her brother was showering, Dietrich laid S. down on the couch, lay on top of her, pulled S.'s pants down, unfastened his pants, and tried to penetrate S. with his penis.

On Thursday, S. told her mother what had happened. S.'s mother called the police department. Sergeant David Wilson and another officer came to S.'s home and talked with her. When Dietrich appeared at S.'s home, he was arrested.

After a two day jury trial, Dietrich was found guilty of child molesting and attempted child molesting.

2. I.C. 35–42–4–3; Ind.Code 35–41–5–1.

## DISCUSSION AND DECISION

I. *Accreditation Testimony*

■ Dietrich claims that the prosecuting attorney improperly elicited testimony from S.'s mother which indirectly vouched for the truthfulness of S. The colloquy went as follows:

Q. Did you tell your daughter to lie about testimony?

A. No, I did not.

R. at 220. Accordingly, Dietrich argues, a new trial is warranted. Dietrich and the State agree that no witness "is competent to testify that another witness is or is not telling the truth." *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 125 (citing *Shepherd v. State* (1989), Ind., 538 N.E.2d 242).

In the case of child molesting, Dietrich asserts, *Okuly v. State* (1991), Ind.App., 574 N.E.2d 315, and *Jarrett v. State* (1991), Ind. App., 580 N.E.2d 245, stand for the proposition that it is impermissible "for a witness to give an opinion as to the credibility of the alleged victim's testimony." Appellant's brief at 6. The State correctly provides the exact *Okuly* statement as:

"Although a witness may permissibly testify that a child is not prone to exaggeration or fantasize and may express an opinion as to a child's ability to accurately describe a sexual experience, a witness may not directly opine that a child is telling the truth about the events at issue."

*Okuly, supra* at 316 (citing *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925.). In *Jarrett*, a doctor testified that most children the victim's age "do not fantasize about sexual relationships without some prior exposure, and that probably 95% of the children telling stories about sexual encounters at that age [age 5] are telling the truth." *Jarrett, supra* at 250. We found the testimony did not amount to his "directly telling the jury he believed" the alleged victim "was telling the truth" and, thus, was "properly admitted." *Id.* Neither *Okuly* nor *Jarrett* directly support the proposition for which Dietrich asserts them.

■ Perhaps the most extensive and appropriate discussion of permissible opinion testimony in child molestation matters is found in *Stewart, supra.* Beginning from the general principle referenced above, "No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth," our supreme court proceeded to explain that "where children are called upon to describe sexual conduct, a special problem exists," and adult witness testimony is allowed in the form of "an opinion as to the child's general competence and ability to understand the subject." *Id.* at 125. But even in such instances, the witness is "prohibited from making direct assertions as to" his belief in the child's testimony. *Id.*

S.'s mother was asked whether she had told her daughter to lie during testimony. In no way did the question elicit, nor did her answer provide, a direct assertion as to her belief in S.'s testimony. Accordingly, such testimony was not prohibited. *Stewart, supra.*

## II. *Reference to Post–Miranda Silence*

In *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the Supreme Court held that use of "evidence of a defendant's silence following arrest and *Miranda* warnings, either for substantive or impeachment purposes, violates the due process clause of the fourteenth amendment" because "the *Miranda* warning carries with it an implicit assurance that silence will carry no penalty." *Henson v. State* (1987), Ind., 514 N.E.2d 1064, 1067.

■ Dietrich asserts that Sergeant Wilson "committed an evidentiary harpoon which violated Dietrich's right to remain silent" when the following colloquy occurred:

Q. What did you subsequently do?

A. Subsequently, we took him to the police station, where we gave him Miranda Rights in a written form, which he refused and requested an attorney.

Appellant's brief at 7 and R. at 253–54.

In *Henson, supra,* the police officer was questioned concerning his contacts with the defendant after his arrest; the final exchange, resulting in an objection and a motion for a mistrial, was as follows:

Q. Did the Defendant refuse to be interrogated?

A. Yes, he did.

*Id.* at 1066. The court found the "disputed question and answer" was "improper." *Id.* at 1067. To determine whether the error "produced a trial which was fundamentally unfair so as to deny defendant due process" or was harmless, our supreme court considered five factors: "1) the use to which the prosecution puts the post-arrest silence; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence indicative of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions." *Id.* See also *McCollum v. State* (1991), Ind., 582 N.E.2d 804, 813 (officer testifies that after being advised of his rights, defendant declined to make a statement).

At the outset, we note that to label Sergeant Wilson's answer a "comment on post-*Miranda* silence" may stretch that appellation to the limit.[3] However, assuming such, the record reflects no effort on behalf of the prosecution to suggest Dietrich's silence was an indication of guilt. The line of questioning which was being followed by the prosecution was: what happened when the officer saw Dietrich; what did Dietrich do; did the officer tell Dietrich he was under arrest; what happened after Dietrich put himself in a search position; "Then what happened?;" "What happened next?;" and, then "What did you subsequently do?" R. at 253. The questions do not appear to be purposefully searching for a response about Dietrich's refusal to talk after *Miranda* warnings. This one comment was the sole trial reference to Dietrich's post-*Miranda* silence. And, according to the record, the trial court offered to admonish the jury to disregard the officer's testimony about Dietrich's silence; Dietrich declined.

Dietrich argues that the "quantum of other evidence indicative of guilt" factor, *Henson,*

---

3. Certainly, the exchange here is equivocal when compared to that reviewed in *Henson.*

*supra*, supports awarding him a new trial because there was a "lack of corroborating evidence" and the evidence was "essentially derived solely from the victim." Appellant's brief at 9. We agree with Dietrich that S.'s testimony was clear and cogent in describing his actions; consequently, her testimony alone could be considered damning. However, the jury had more than her testimony: the effect of her testimony was strengthened by testimony of S.'s mother, S.'s girlfriend Holly, and Dietrich himself which corroborated contemporary happenings. Potentially most damning to Dietrich in the jury's view could have been Sergeant Wilson's testimony that Dietrich himself said,

"Hey, I didn't mean for anything to happen. Things just got carried away."

when Dietrich first saw Wilson. R. at 252. In all, we conclude there was a great deal of other evidence supporting the jury's guilty verdict.

Our review of the record persuades us that Sergeant Wilson's answer, even if construed as a comment on Dietrich's post-*Miranda* silence, did not have an "intolerable prejudicial impact" on the jury. *Henson, supra.*

Affirmed.

CHEZEM and RILEY, JJ., concur.