**Walter L. WHITE, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

**No. 92A03–9401–CR–37.**

Court of Appeals of Indiana,
Third District.

March 15, 1995.

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Christopher L. Lafuse, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Walter White ("White") was found guilty of child molestation, a class C felony.[1] White raises seven issues on appeal, but we consider the following issue dispositive: whether the prosecutor impermissibly commented on White's post-*Miranda* silence in response to police questioning. We also address other issues of prosecutorial misconduct and sentencing errors because they may reoccur.

We reverse.

The record reveals the following facts. White lived in a two-story home and rented the top story to a family. White's tenants had a teenage girl, V.K. White's home became a popular place for V.K. and other neighborhood kids to congregate. B.S., a fourteen-year-old who frequented White's home, testified that on one occasion White put on a pornographic movie and put his mouth around B.S.' penis. B.S. also said that, on another occasion, White had tried to make B.S. put his mouth on White's penis. White denied any sexual acts with the children.[2] White and others testified that B.S. had threatened White, beat him, broken into his home, and stolen from him. Other witnesses testified that B.S. had threatened to tell people that bad things happened in White's home if White did not do what B.S. demanded of him.

White argues that the prosecutor impermissibly used White's silence against him in violation of his due process rights. White argues this is fundamental error which is presumed to cause prejudice in a case that turns on credibility.

At trial, the State presented evidence that White was arrested, read the *Miranda* warnings, and questioned about the alleged crime. Police investigator Tom Fisher ("Fisher") testified as to White's reaction when asked about the alleged victims' specific allegations. The following exchange took place:

Q[, Prosecutor]. Would you tell the jury what you saw?

[A, Fisher]. Mr. White, when questioned about the alleged molesting charges, would become *non-responsive*. He would physically fold his hands together, face looking towards the floor, and then would actually bend down in a tucked position, would remain in that position until another avenue of questioning was asked.

Q. When you say another avenue of questioning, what do you mean?

A. At that time, if you would ask him about the Knighthood or about his employment, he would then come out of this position and *respond* to the [questions].

\*      \*      \*      \*      \*      \*

Q. In this particular case, did you use the technique to observe his reaction by actually changing the subject after asking questions about the accusations?

A. It's not exactly a technique, but what it is is that when you find the individual that you're talking to is *not responding* back to the questions you're asking, you sometime will change the subject to see if they're going to *respond* to anything that you're talking about.

Q. O.K. And you did that in this case.

A. Yes, I did.

Q. O.K. And so what you're telling the jury is that he ... he *commenced responding* again.

A. Yes, he did.

Record, pp. 530–531 (emphasis added).

When White testified, the prosecutor cross-examined him in the following fashion:

Q[, Prosecutor]. [D.K., complaining witness,] never admitted breaking your cane [3], did he?

1. Ind.Code § 35–42–4–3(c) defines class C child molesting as occurring when: "[a] person sixteen (16) years of age or older who, with a child of twelve years of age or older but under sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting...."

2. White was also charged with touching another minor, D.K., with the intent to arouse White's sexual desires. I.C. § 35–42–4–3(d). The jury was unable to reach a unanimous verdict on this charge.

3. Part of White's defense was a theory that D.K. and B.S. were spreading lies about him because

A[, White]. No.

Q. [D]id you ever ask him whether he broke the cane?

A. I informed him that he was going to pay for it.

Q. Yea. You never asked him whether he broke the cane, did you?

A. That's right.

Q. And you heard him sit there ...

A. And he never denied it in front of me.

Q. O.K. *And you never denied sexually assaulting these children when the police asked you, did you?*

A. I did not know it was illegal to be silent.

Q. A couple of minutes ago, we were talking about [D.K.] And I said he had never admitted to you that he broke your cane. And your response was well, he never denied it. Wasn't that right?

A. Yes.

Q. O.K. *Apparently, you attach some significance to that that he must have been guilty if he didn't deny it.* That was your retort to me, wasn't it?

A. That I said he didn't deny it?

Q. *No, that you attach some particular significance to somebody who, if they're challenged and asked did you do something ... or not even asked, told, accused, and they don't deny it ...*

A. I wanted to see what his reaction was when I asked him for the money for the cane, to see if he would admit it or not.

Q. And you're attaching ...

A. Apparently, the police do the same thing, right? They wait to see what kind of reaction a person gives.

Q. Yea, I think they do, right. *And you're telling me that since he didn't deny it, you then were sure that he must have broken the cane.*

Record, pp. 702–703 (emphasis added, footnote added).

The prosecutor continued down this road during closing arguments, in the following manner:

You heard [Fisher] testify and you have the right to assign credibility to [Fisher's] testimony and his experience. And you heard [White] testify about [D.K.] and his accusation of [D.K.] about the cane and what did he say when I said, Mr. White, *did [D.K.] ever admit to you that he did? No ... no, he didn't deny it. That meant something to Mr. White. Submit to you it meant the same thing to the police officers when they asked a series of questions. What did they get? They didn't get what you folks got.* Almost two years later: Absolutely not. Never poked anybody in their genitals. Absolutely not. *They got the exact opposite of what [you] got.*

Record, pp. 769–770 (emphasis added).

▮▮▮ Using a defendant's post-*Miranda* silence for impeachment violates the Due Process clause of the Fourteenth Amendment. *Doyle v. Ohio* (1976), 426 U.S. 610, 620, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98; *Bevis v. State* (1993), Ind.App., 614 N.E.2d 599, 602; U.S. Const. amend. XIV. *Miranda* warnings assure the accused that silence will carry no penalty. *Bevis, supra.* The State concedes that the above questions and arguments were improper, but argues that the error is harmless and thus reversal is not warranted. A *Doyle* error is harmless if this court, after examining the record as a whole, concludes beyond a reasonable doubt that the error did not affect the jury's verdict. *Id.*

▮▮ When conducting a harmless error analysis for a *Doyle* violation, we employ a five-factor test. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 92, *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349. These factors include:

1. The use to which the prosecution puts the post-arrest silence. 2. Who elected to pursue the line of questioning. 3. The quantum of other evidence indicative of guilt. 4. The intensity and frequency of the reference. [and] 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

*Id* (parenthetical in original) (quoting *Williams v. Zahradnick* (4th Cir.1980), 632

---

he wanted the youths to pay for an ornate cane

he claimed they broke.

**688**

F.2d 353). After examining the record and applying these factors, we cannot conclude the error was harmless.

■ First, the prosecution used White's post-arrest silence in three ways: (1) through Fisher, to emphasize White's failure to respond to incriminating questions while responding to the mundane; (2) through White, to imply that White demonstrated his guilt by not denying the allegations; and (3) during closing arguments, to emphasize the implication of guilt and to point out that White did not deny guilt to the police but denied the allegations at trial. These repeated references cannot be characterized as inadvertent. The prosecutor spread these comments throughout the trial in an effort to convince the jury that White's silence indicated guilt and proved his in-court explanation false.

Next, the quantum of evidence in this case is not so overwhelming as to render the error harmless. White's trial came down to a credibility judgment; it was the victims' word against White's. The waters of testimonial conflict were further muddied by several references by both parties' witnesses to the antagonistic relationship of the parties, the alleged victims' threats to tell people bad things happened in White's home, and their contradictory statements under oath about whether White had molested them.

Finally, the trial court had no opportunity to warn the jury of the dangers of this type of testimony. No objection was made to these impermissible references. A *Doyle* violation, however, is fundamental error and a party does not waive the right to raise this issue on appeal merely because he failed to object. *Bevis, supra,* at 604.

■ In reaching our conclusion that the prosecutor committed reversible error, we note that "[b]ecause the nature of the *Doyle* error is so egregious and so inherently prejudicial, reversal is the norm rather than the exception." *Id* (quoting *Williams, supra*). Further, when the prosecutor asks the defendant directly about his silence, the intent to impeach is presumed and the probable impact on the jury is more harmful than harmless. *Bevis, supra.*

We need not reach the rest of White's arguments.[4] However, because these errors might reoccur, we note that the trial court committed several sentencing errors.

The trial court considered the following aggravators during sentencing: (1) seriousness of the prior crime, (2) need for correctional treatment best provided by a penal facility, (3) no attempt at rehabilitation, (4) reduced sentence would depreciate the seriousness of the crime, (5) crime required confronting victim, (6) age difference between White and victim, (7) White took advantage of victim's age, (8) sex crime, and (9) risk of spreading HIV.

■ White's conviction for the prior crime to which the first aggravator refers has been reversed on appeal and thus could no longer serve as a valid aggravator. *See White v. State* (1994), Ind.App., 643 N.E.2d 414. Aggravator (3) is inapplicable as White had the right to protest his innocence at all stages of the criminal proceeding, including sentencing. *Dockery v. State* (1987), Ind. App., 504 N.E.2d 291, 297. This is particularly true when the State's evidence comes only from the victims. *Id.* Aggravating factor (4) is only appropriate when the sentenc-

4. The prosecutor committed other errors. The prosecutor impeached White by emphasizing his failure to call one of the witnesses on his witness list. This type of impeachment is only permissible if the would-be witness is not equally available to the impeaching party. *Denney v. State* (1988), Ind.App., 524 N.E.2d 1301, 1304, *trans. denied.* There was no such showing and indeed not even an argument of such in this case.

Further, the prosecutor repeatedly referred to White buying the kids alcohol despite the trial court's early admonition to avoid this area.

Finally, the prosecutor elicited testimony from many witnesses as to collateral events at White's

home including pornographic movies and magazines, scenes of masturbation, and uncharged sexual acts with another boy. Much of this evidence was unrelated to the charged crimes. While uncharged acts may be admitted to show plan, motive, knowledge, and other non-character purposes, *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 128, much of this testimony would not fit under the recognized exceptions. While White's trial counsel failed to object to these matters, the prosecutor's eliciting testimony on these matters formed the basis for a meritorious ineffective-assistance-of-counsel claim for failing to object.

ing judge considered reducing the sentence. *Shackelford v. State* (1993), Ind.App., 622 N.E.2d 1340, 1346. Since the sentencing judge gave no indication that he considered imposing a reduced sentence, this aggravator was improperly considered. Further, alleged aggravators (5) through (8) are elements of all molestation crimes. A factor which comprises a material element of a crime cannot also constitute an aggravator to enhance that crime. *Id.* The sentencing court must relate the statutory aggravators directly to the facts of the case. *Id.* Aggravator (2) fails for the same reason, a perfunctory recitation of an aggravating factor will not support an enhanced sentence. *Id.* Finally, aggravator (9) plainly does not apply as the record contains no evidence that White has HIV, knew he had the virus, and received risk counseling. All three elements must be present for this aggravator to apply. I.C. § 35–38–1–7.1(a)(8)(B)–(C). Again, we point out these sentencing errors only because of the risk that they may reoccur.

Reversed.

GARRARD and BARTEAU, JJ., concur.