Timothy L. COSSEL, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 62A01–9603–PC–74.

Court of Appeals of Indiana.

Dec. 30, 1996.

---

John Pinnow, Greenwood, for Appellant–Petitioner.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Timothy L. Cossel appeals from the post-conviction court's denial of his petition for

post-conviction relief. Cossel was tried by jury and convicted as charged of five felonies: Rape, as a Class A felony; Criminal Confinement, as a class B felony; Criminal Deviate Conduct, as a Class A felony; Battery, as a Class C felony; and Burglary, as a Class B felony. His convictions were affirmed on direct appeal. Cossel subsequently filed his petition for post-conviction relief, which was denied.

We affirm.

## ISSUES

Cossel presents several issues for our review which we restate as:

1. Whether Federal Rule of Evidence 404(b), as adopted in *Lannan v. State*, 600 N.E.2d 1334 (Ind.1992), applies retroactively to petitions for post-conviction relief.

2. Whether Cossel was denied the effective assistance of trial counsel.

3. Whether double jeopardy prohibits Cossel's convictions for both rape and criminal confinement.

## FACTS

The following facts are found in this court's memorandum decision on Cossel's direct appeal:

On April 25, 1983, shortly after 10:15 p.m., K.D. put her child to bed and went to bed herself. She was awakened shortly thereafter when a man removed her covers, pulled up her nightgown and jumped on her, putting a knife to her back. The attacker then threatened to kill both her and the child if she resisted.

The attacker attempted to engage in anal sex, which was extremely painful for K.D. The man then warned her not to look at his face, turned her over and covered her face with a pillow. He then raped K.D. He then turned her back over, jabbed her in the back with the knife and told her if she reported the assault that he would kill her and the child. The man then left.

In the summer of 1984, a Tell City police officer presented a photographic array for K.D. to view. After she could not identify her assailant, Officer Davis removed Cos-

sel's picture and indicated that Cossel could be viewed in a visual line-up at Owensboro, Kentucky. At the line-up, K.D. identified Cossel as her attacker. Cossel was charged by information on June 4, 1986. A jury trial commenced on October 30, 1989, at which two other rape victims, S.K. and H.M., testified. On November 3, 1989, the jury found Cossel guilty on all five counts. Cossel appeals the jury verdict on all five counts.

*Cossel v. State*, No. 62A01–9003–CR–117, slip op. at 2, 564 N.E.2d 355 (Ind. Ct.App. filed Dec. 11, 1990). Cossel's convictions were upheld on direct appeal. Cossel then filed his petition for postconviction relief which was denied by the court. Cossel now appeals.

## DISCUSSION AND DECISION

### Standard of Review

 The purpose of a petition for postconviction relief is to raise issues unknown or unavailable to a defendant at trial. *Grey v. State*, 553 N.E.2d 1196, 1197 (Ind.1990). Thus, post-conviction relief is not a "super appeal." *Collier v. State*, 572 N.E.2d 1299, 1301 (Ind.Ct.App.1991), *trans. denied.* Failure to raise error on direct appeal results in waiver of that issue on post-conviction review unless the error was fundamental. *See, e.g., Simmons v. State*, 642 N.E.2d 511 (Ind.1994); *Holleman v. State*, 641 N.E.2d 638, 640–41 (Ind.Ct.App.1994), *trans. denied.* To qualify as "fundamental," the error must be a substantial blatant violation of basic principles rendering the trial unfair to the defendant. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994). A claim of fundamental error is not viable without a showing of grave peril and the possible effect on the jury's decision. *Isom v. State*, 651 N.E.2d 1151, 1152 (Ind. 1995). The appellant bears the burden of proving by a preponderance of the evidence that the alleged error occurred and that the error was fundamental in nature. Ind. Post–Conviction Rule 1 § 5. We reverse only if the petitioner shows that the evidence is without conflict and leads only to a conclusion opposite that reached by the post-conviction court. *St. John v. State*, 529 N.E.2d 371, 374 (Ind.Ct.App.1988), *trans. denied.*

## Issue One: Retroactivity of Federal Rule of Evidence 404(b)

Cossel objected at trial to the admission of S.K.'s testimony, which described Cossel's prior acts of sexual misconduct, and Cossel raised the issue on direct appeal. This court held that S.K.'s testimony was admissible under the depraved sexual instinct exception. *Cossel*, slip op. at 4. After our memorandum decision was handed down, the supreme court decided *Lannan v. State*, 600 N.E.2d 1334 (Ind.1992), which abandoned the depraved sexual instinct exception and adopted Federal Rule of Evidence 404(b).[1] Cossel's direct appeal was not pending when *Lannan* was decided and, thus, he did not benefit from the new rule. Cossel now argues that the rule announced in *Lannan* should apply retroactively to his case on postconviction relief.[2] In *Pirnat v. State*, 607 N.E.2d 973 (Ind.1993), our supreme court stated, "We doubt *Lannan* will qualify for retroactive application to cases on collateral review, but reserve that question for another day." *Id.* at 974. Although this issue has not been squarely presented to our supreme court, it has been decided by implication.

In *Lannan*, our supreme court adopted Federal Rule of Evidence 404(b). *Lannan*, 600 N.E.2d at 1339. Previously, Indiana law had permitted the admission of evidence of certain kinds of prior sexual conduct under the depraved sexual instinct exception. *Stewart v. State*, 555 N.E.2d 121, 124 (Ind. 1990), *overruled by Lannan*, 600 N.E.2d 1334. This exception had been carved out of the general rule which prohibited the admission of past uncharged misconduct because "acts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character, and to lend credence to a victim's accusations or testimony which describe acts which would otherwise seem improbable standing alone." *Id.* The depraved sexual instinct exception did not require the State to give notice of its intention to present evidence of a defendant's depraved sexual instinct, nor did it require a particular similarity between the prior bad act and the crime charged. *Lannan*, 600 N.E.2d at 1338.

■■ With the abandonment of the depraved sexual instinct exception and the adoption of Rule 404(b), the supreme court established specific guidelines which limited the admission of evidence of prior sexual misconduct. Evidence of prior sexual misconduct is no longer admitted to show action in conformity with a particular character trait. *Id.* Now, the evidence may be admissible, despite its tendency to show bad character or criminal propensity, if it makes the existence of an element of the crime charged more probable than it would be without such evidence. *Id.* This rule qualifies as a "new rule" because it "breaks new ground," and the result of *Lannan* was not dictated by precedent existing at the time the defendant's conviction became final. *See Teague v. Lane*, 489 U.S. 288, 300, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, 349 (1989) (Case announces new rule if result was not dictated by precedent existing at time defendant's conviction became final).

■■ Generally, a new constitutional rule of criminal procedure is not applicable to those cases on collateral review, that is, those which have become final before the new rule is announced. *Daniels v. State*, 561 N.E.2d 487, 488–89 (Ind.1990) (*citing Teague*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334). However, two exceptions exist. First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073, 103 L.Ed.2d at 353, or prohibits "a certain category of punishment for a class of defendants because of their status or offense." *Daniels*, 561 N.E.2d at 490. Cossel concedes that the *Lannan* rule does not fall under this exception. Brief of Appellant at 34.

---

1. The text of the Federal Rule of Evidence 404(b) has since been substantially adopted as Indiana Rule of Evidence 404(b), which became effective January 1, 1994. *Butcher v. State*, 627 N.E.2d 855, 858 n. 3 (Ind.Ct.App.1994).

2. We do not wish to imply that Cossel would be entitled to relief if *Lannan* were to be applied retroactively.

■ Instead, Cossel argues that the second *Teague* exception applies. He correctly states that a new rule should be applied retroactively if it requires the observance of "those procedures that ... are implicit in the concept of ordered liberty" and "without which the likelihood of an accurate conviction is seriously diminished." *Id.* (*quoting Teague,* 489 U.S. at 307, 314, 109 S.Ct. at 1073, 1077, 103 L.Ed.2d at 353, 358). This exception is applicable only to "watershed rules" necessary to the fundamental fairness of a criminal proceeding and which "must not only improve accuracy, but also 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." *Id.* (*quoting Sawyer v. Smith,* 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193, 211 (1990)).

Contrary to Cossel's assertion, the rule announced in *Lannan* does not fall under the second exception because Federal Rule of Evidence 404(b) is not a "watershed rule, of criminal procedure." Our supreme court implicitly rejected that argument when it held that the rule announced *Lannan* does not qualify for "fundamental error" analysis. *Ried v. State,* 615 N.E.2d 893, 893 (Ind. 1993).[3] It follows that neither is the rule an absolute prerequisite to fundamental fairness that is "implicit in the concept of ordered liberty." *See Teague,* 489 U.S. at 314, 109 S.Ct. at 1077, 103 L.Ed.2d at 358; *see also Ried,* 610 N.E.2d at 281(to constitute fundamental error, error must be blatant violation of basic and elementary principles, and harm must be substantial and appear clearly and prospectively).

Rule 404(b) was adopted because the justifications for the depraved sexual instinct exception had become outweighed by the mischief created by the open-ended application of the rule. *Lannan,* 600 N.E.2d at 1338. The adoption of this rule was not an alteration of "our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *See Teague,* 489 U.S. at 314, 109 S.Ct. at 1077, 103 L.Ed.2d. at 358. It was a modification of the conditions under which prior sexual misconduct evidence can be admitted. Thus, we conclude that the admission of prior uncharged sexual misconduct does not undermine the fundamental fairness of a criminal proceeding. We hold that *Lannan* does not apply retroactively to petitions for post-conviction relief.

### Issue Two: Effective Assistance of Counsel

Cossel contends that he was denied the effective assistance of trial counsel. Specifically, he argues that counsel was ineffective first when he failed to object to K.D.'s line-up and in-court identifications, and second when he failed to object to the testimony of H.M. who described other crimes. We disagree.

When this court reviews a claim of ineffective assistance of counsel, we measure counsel's performance against a "reasonably effective assistance" standard. *Burr v. State,* 492 N.E.2d 306, 308 (Ind.1986). The defendant is required to show strong and convincing evidence to overturn the presumption of competence. *Id.* First, the defendant must show that the performance of his counsel was deficient. *Turner v. State,* 669 N.E.2d 1024, 1026 (Ind.Ct.App.1996). We must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Id.* Second, the defendant must show prejudice as a result of the deficient performance. *Id.* A defendant must prove that his attorney's failure to function was so prejudicial that it deprived him of a fair trial. *Id.* A fair trial is denied when the conviction or sentence results from a breakdown of the adversarial process that renders the result unreliable. *Id.*

■ We note that, as a general rule, ineffective assistance of counsel is an issue known and available at the time of the direct appeal. *Montano v. State,* 649 N.E.2d 1053, 1057 (Ind.Ct.App.1995), *trans. denied.* Here, because trial and appellate counsel were the same we will address Cossel's arguments on the merits. *See McBride v. State,* 595

---

**3.** To illustrate the type of rule which satisfies the second exception the Supreme Court directs us toward the rule announced in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which held that a defendant has the right to be represented by counsel in all criminal trials for serious offenses. *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

N.E.2d 260, 262 (Ind.Ct.App.1992), *trans. denied.*

## A. Failure to Object to Identification of Cossel

 Cossel argues that he did not receive the effective assistance of counsel because counsel failed to object to K.D.'s line-up and in-court identification of Cossel. Whenever a claim of ineffective assistance is based on a failure to object, the defendant must demonstrate that a proper objection, if made, would have been sustained by the trial court. *Gilliam v. State,* 650 N.E.2d 45, 53 (Ind.Ct.App.1995), *trans. denied.* Where it is established that an out-of-court identification has been erroneously admitted, such error may be harmless. *Wethington v. State,* 560 N.E.2d 496, 502 (Ind.1990). A subsequent, in-court identification may still be admissible if the State establishes by clear and convincing evidence that an independent basis for that in-court identification exists. *Id.* A determination that an in-court identification by a witness was properly admitted will, in many instances, render the erroneous admission of a pre-trial identification by the same witness harmless. *Id.* at 503.

Here, the State concedes that the line-up identification of Cossel was improperly suggestive but contends that the error was harmless because the in-court identification of Cossel was properly admitted. The inquiry with reference to an in-court identification is whether, under the totality of the circumstances surrounding the witness's initial observation of the perpetrator at the scene of the crime, the witness could resist any suggestiveness inherent in the improper confrontation staged by the police and make an accurate decision, based on that earlier contact with the perpetrator, that the person presented to her at trial was the one who committed the crime. *Id.* Factors relevant to the determination of whether an independent basis exists to support the admission of the in-court identification are (1) the amount of time the witness was in the presence of the perpetrator, (2) the amount of attention the witness had focused on him, (3) the distance between the two and the lighting conditions at the time, (4) the witness's capacity for observation and opportunity to perceive particular characteristics of the perpetrator, (5) the lapse of time between the crime and the subsequent identification, (6) the accuracy of any prior descriptions, (7) the witness's level of certainty at the pre-trial identification and (8) the length of time between the crime and the identification. *Id.*

K.D. testified that although the house was "shadowy," she could clearly see because there was light from the moon and a street light shining into the house. Record at 414. K.D. observed Cossel's face for approximately ten seconds when she was being turned from her stomach to her back. Record at 415. While K.D. was lying on her back, she was able to view Cossel's chin and mouth area. Record at 414–15. Because Cossel was on top of K.D., the distance between the two parties was not great. After seeing Cossel's face, K.D. "felt like [she] knew this person" and that he knew K.D. Record at 417. K.D. testified that she had seen Cossel three months earlier when she and her husband had purchased a vacuum cleaner. Record at 431. Cossel spoke with K.D. at that time and stated that he knew where she and her husband lived. Record at 431.

We agree with the post-conviction court that K.D. had adequate lighting and saw Cossel long enough to identify him as her attacker. K.D. observed Cossel at close range and recalled speaking with him three months prior to the attack. The totality of the circumstances indicates that K.D. could resist any suggestiveness inherent in the earlier line-up identification of Cossel and make an accurate decision that the person presented at trial was the one who had committed the crime. Any error in admitting the line-up identification is harmless. Further, Cossel has not shown that if counsel had objected to the in-court identification it would have been sustained. Cossel has failed to show that he received the ineffective assistance of counsel.

## B. Failure to Object to H.M.'s Testimony

Cossel next contends that counsel was ineffective when he failed to object to H.M.'s testimony regarding the events and circumstances surrounding Cossel's uncharged at-

tack on her. As we have previously stated, when a claim of ineffective assistance of counsel is based on counsel's failure to object to the admission of evidence, the defendant must show that the objection would have been sustained had a proper objection been made. *Gilliam,* 650 N.E.2d at 53. Here, this court has already concluded that at the time of trial H.M.'s testimony was admissible under the depraved sexual instinct exception. *Cossel,* op. at 359. Thus, had counsel objected, that objection would not have been sustained. Cossel has failed to show that he did not receive the effective assistance of counsel.

### Issue Three: Double Jeopardy

Finally, Cossel asserts that double jeopardy principles were violated when he was convicted of rape, criminal deviate conduct and criminal confinement. Specifically, Cossel argues that the force used to support a charge of confinement was no more than was necessary to carry out the other acts. We disagree.

Cossel failed to raise this issue on direct appeal. However, the issue is not waived because a double jeopardy violation, if shown, constitutes fundamental error. *Channell v. State,* 658 N.E.2d 925, 931 (Ind. Ct.App.1995), *trans. denied; Madden v. State,* 656 N.E.2d 524, 526 (Ind.Ct.App.1995), *trans. denied.* For the purposes of double jeopardy, two offenses are the same when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact. *Wethington,* 560 N.E.2d at 506. Double jeopardy analysis does not end with an evaluation and comparison of the statutory provisions. *Id.* at 507. Rather, the factual bases alleged by the State in the information or indictment, and upon which the charges are predicated, must also be examined. *Id.*

Where the crime of rape is charged as forcible rape, the charge necessarily includes the crime of confinement to the extent force, or threat of force, effectuates the rape. *Webster v. State,* 628 N.E.2d 1212, 1214 (Ind.1994); *Griffin v. State,* 583 N.E.2d 191, 194 (Ind.Ct.App.1991). The same is true for criminal deviate conduct.

*Salone v. State,* 652 N.E.2d 552, 560–61 (Ind. Ct.App.1995), *trans. denied.* Any other confinement of the victim beyond that inherent in the force used to effectuate the rape or the criminal deviate conduct constitutes a violation of the confinement statute apart from the violation inherent in the other offenses. *Webster,* 628 N.E.2d at 1214; *Salone,* 652 N.E.2d at 561.

Here, the evidence presented at trial shows that after Cossel had finished having sexual intercourse with K.D., he turned her onto her back. Record at 415. A pillow covered K.D.'s face and Cossel began "jabbing" K.D. with his knife. Record at 415. He then threatened K.D. and warned her not to tell her husband or call the police because he would kill her. Record at 415. Cossel also told K.D. that he would come back and "shoot your little boy laying there next to you." Record at 415. K.D.'s son began to cry and Cossel then left. Record at 415. This evidence reveals confinement beyond that necessary to effectuate the rape or the criminal deviate conduct. Accordingly, Cossel's convictions for rape and confinement do not violate double jeopardy principles.

Affirmed.

SHARPNACK, C.J., and BAKER, J., concur.