### Demetrius TAYLOR, Appellant–Petitioner,

v.

### STATE of Indiana, Appellee–Respondent.

### No. 49A02–9710–PC–673.

Court of Appeals of Indiana.

July 28, 1998.

Transfer Granted Sept. 30, 1998.

Susan K. Carpenter, Public Defender, Victoria Christ, Deputy Public Defender, Indianapolis, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

MATTINGLY, Judge.

Demetrius Taylor appeals the denial of his petition for post-conviction relief. We consolidate and restate his issues as:

1. Whether improper references at trial to Taylor's post-arrest silence constituted reversible error; and

2. Whether Taylor was subjected to double jeopardy when he was convicted of both rape and confinement.[1]

We reverse and remand.

---

1. Taylor argues in the alternative that he was denied his right to effective assistance of counsel on direct appeal because counsel failed to raise the issues of the improper reference to Taylor's post-arrest silence and the double jeopardy violation. Because we believe Taylor has demonstrated fundamental error, his post-conviction claims are not waived by counsel's failure to raise them on direct appeal. Therefore, we need not ana-

## FACTS

On December 18, 1989, the victim left her apartment door slightly open when she went to the front of her apartment building to meet a neighbor who was to take the victim's daughter to school. When the victim returned to her bedroom, she was confronted by Taylor, who had a knife. Taylor ordered the victim to disrobe and lie on the bed, where he forced her to have intercourse. Afterwards, Taylor asked the victim if she had any money and also inquired about the contents of some packages under a Christmas tree. Taylor left after he warned the victim not to call the police.

A jury found Taylor guilty of Rape, a class A felony,[2] Confinement, a class B felony[3] and Burglary, a class B felony.[4]

Additional facts will be provided as needed.

## STANDARD OF REVIEW

An action for post-conviction relief is a special quasi-civil remedy where a party can raise an error which, for various reasons, was not available or known at the time of the original trial or appeal. Ind. Post–Conviction Rule 1(1); *Long v. State*, 679 N.E.2d 981, 983 (Ind.Ct.App.1997). A petitioner seeking post-conviction relief has the burden of establishing grounds for relief by a preponderance of the evidence. P–C.R. 1(5); *Long*, 679 N.E.2d at 983. The standard of review for a post-conviction hearing is similar to that of other trials where the trial judge hears the evidence and we review the trial court's ruling. The judge who presides over the post-conviction hearing has exclusive authority to weigh the evidence and determine the credibility of the witnesses. *Id.* So, we will not set aside the trial court's ruling on a post-conviction petition unless the evidence is without conflict and leads solely to a result

lyze Taylor's substantive issues within the context of an ineffective assistance of counsel claim.

2. Indiana Code Sec. 35–42–4–1.

3. Indiana Code Sec. 35–42–3–3.

4. Indiana Code Sec. 35–43–2–1.

different from that reached by the trial court. *Id.*

## DEFENDANT'S POST–ARREST SILENCE

■■■ Taylor asserts the prosecution improperly used his post-arrest, post-*Miranda* silence for impeachment purposes, in violation of the Due Process Clause's prohibition against fundamental unfairness as interpreted in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The *Miranda* warnings give a criminal defendant implicit assurances that silence will carry no penalty; so, in some circumstances, it is fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. *Id.* at 618, 96 S.Ct. 2240; *Bevis v. State,* 614 N.E.2d 599, 602 (Ind.Ct. App.1993). Because the nature of a *Doyle* error is so egregious and so inherently prejudicial, reversal is the norm rather than the exception. *White v. State,* 647 N.E.2d 684, 688 (Ind.Ct.App.1995). A *Doyle* violation is fundamental error, and a party does not, by failing to object at trial, waive his or her right to subsequently raise the issue. *Id.*

Taylor testified at trial that he had known the victim prior to the date of the offense, that the two had engaged in a sexual encounter about a month before the incident, that the victim had invited Taylor to her apartment on the date of the offense, and that the two engaged in consensual intercourse. He denied raping the victim. On cross examination, the State questioned Taylor about why he had not raised this consent defense earlier:

Q. So meanwhile, there's been six months since then, . . .

A. Yes.

Q. . . . isn't that correct? And, all this time you knew that you were accused of rape, . . .

A. Yes.

Q. . . . of raping [the victim]?

A. That's what I was accused of.

Q. And Lt. Daggy asked to interview you, . . .

A. Uh Hum.

\*     \*     \*     \*     \*     \*

Q. Okay, and you didn't choose to tell him any of this, did you?

A. No.

Q. But you sat here, yesterday and today, and you heard [the victim's] evidence, . . . .

A. Yes.

R. 449–50. At that point Taylor's counsel objected. The State withdrew its question after the court sustained the objection.

Shortly thereafter, the State asked Taylor "So it's now that you choose to offer a story that would explain your being in [the victim's] apartment, right?" Taylor's counsel again objected, and his objection was overruled. Taylor responded that he told his mother the same story the day after he was arrested, and his mother so testified. R. 454. Later, the State called Lieutenant Daggy, an investigating officer, back to the stand and the following exchange occurred:

Q. Did you do all the investigation you felt necessary?

A. Yes.

Q. Is there anything more you could have done, uh, if you thought there was a defense of consent?

A. Well, if anybody would tell me that there was a defense of consent, you know, I would ask questions, uh, you know, "Where did you meet the person, how long have you known them, if it was consensual, how many times have you had consensual sex, where were you at when you had the consensual sex," and then you try to corroborate those kinds of statements with an investigation.

Q. Who would you ask those questions of?

A. Uh, Demetrius Taylor.

Q. Before asking him questions, what are you required to do?

A. Advise him of his rights.

Q. Did you advise Mr. Taylor of his rights?

A.   Yes, I did.

R. at 512–13.

The State's questions were impermissible under the *Doyle* standard, as they were used to impeach Taylor's exculpatory testimony by making direct reference to his post-arrest silence.   However, under some circumstances, a *Doyle* violation may be harmless error.   To determine whether the error is harmless, we assess the record as a whole to measure the probable impact of the improper evidence on the jury.   If we can conclude beyond a reasonable doubt that the error did not influence the jury verdict, the error is harmless.   *Henson v. State*, 514 N.E.2d 1064, 1067 (Ind.1987).

We look to five factors in conducting our analysis:

1) the use to which the prosecution puts the post-arrest silence;

2) who elected to pursue the line of questioning;

3) the quantum of other evidence indicative of guilt;

4) the intensity and frequency of the reference; and

5) the availability to the trial judge of the opportunity to grant a motion for a mistrial or to give curative instructions.

*Id.* We will examine the factors in turn.

1.   Based on the previously set out questions, it is clear that the State used the testimony about Taylor's post-arrest silence for the impermissible purpose of impeaching Taylor's exculpatory testimony.

2.   The line of questioning was pursued primarily, but not exclusively, by the State.[5]

3.   The quantum of evidence of Taylor's guilt was not so overwhelming as to render the error harmless.   The State points out that the victim provided detailed testimony describing the rape, and correctly notes that the uncorroborated testimony of the victim is sufficient to support a rape conviction.   However, we decline to hold that evidence which is merely *sufficient* to sustain a conviction is necessarily so "overwhelming" that it outweighs the harmful effect of the State's inquiry into the defendant's silence.   See *White v. State*, 647 N.E.2d 684, 688 (Ind.Ct. App.1995), where we found that a *Doyle* violation was reversible error, in part because the trial came down to a credibility judgment:   it was the victim's word against the Defendant's.   The State's evidence against Taylor was of the same nature.

4.   Like the statements in *White*, the State's "repeated references cannot be characterized as inadvertent.   The prosecutor spread these comments throughout the trial in an effort to convince the jury that [the defendant's] silence indicated guilt and proved his in-court explanation false."   *Id.* The references to Taylor's silence were numerous, and they shifted the focus of his trial to the question of whether he had recently fabricated the consent defense.[6]   The frequency and intensity of the remarks were such that we cannot conclude the error was harmless.

5.   Finally, we look to the question whether the trial judge had the opportunity to warn the jury of the dangers of this type of testimony.   The judge did sustain Taylor's objection to the initial reference to Taylor's post-*Miranda* silence.   Upon objection, the judge stated "If that was the question or the

---

**5.**   After the testimony quoted at length above, Taylor's counsel called the deputy prosecutor as a witness in order to demonstrate to the jury that the deputy had been made aware of the consent defense several months prior to trial.   The deputy prosecutor stated she was aware Taylor's counsel had suggested that would be a defense, but she went on to say "I heard nothing from your client."   R. at 522.   The deputy prosecutor then stated that she could not recall whether she had discussed the defense with Lieutenant Daggy at that time.   She went on to say "My understanding was that he had done a thorough investigation of all possible defenses that we could address, without speaking to the defendant, as

you know we are not allowed to speak to the defendant."   R. at 522.   The State argues that by eliciting that testimony following the State's questioning of Taylor and Lieutenant Daggy, Taylor's counsel "invited the very error he now claims is fundamental."   Brief of Appellee at 9.   We decline to characterize this attempt by Taylor's counsel to salvage his client's consent defense as an "invitation of error."

**6.**   We must reject the State's characterization of the references to Taylor's post-*Miranda* silence as "oblique," "cryptic," Brief of Appellee at 8, and "isolated," Brief of Appellee at 10.

inference, there is no inference permitted and, of course, that question will be disregarded by the jury, because each person has a right not to testify or not discuss anything with the lieutenant or anyone else." R. at 452.

We do not believe the judge's remarks sufficiently cured the *Doyle* error so as to render it harmless. The judge referred to "the right not to testify," which was not the basis for the objection and which right Taylor was not asserting at his trial. The reference to the right to "not discuss anything" was also insufficient to mitigate the damage from the improper testimony, as that vague reference to the *Doyle* protections could not clearly convey to the jury the reason the comments were objectionable and were to be disregarded. Further, the trial judge allowed, over objection, subsequent testimony to the effect that Taylor had not previously asserted his consent defense and that it must therefore have been a recent fabrication.

We cannot conclude beyond a reasonable doubt that the error arising from the testimony regarding Taylor's post-arrest, post-*Miranda* silence did not influence the jury's verdict. The error was not harmless, and Taylor's convictions must be reversed.

### DOUBLE JEOPARDY

While we reverse Taylor's convictions because of the *Doyle* violation, we address Taylor's double jeopardy claim as well, as it is certain to be an issue again on remand.

Taylor asserts that double jeopardy principles were violated when he was convicted of rape and criminal confinement. A double jeopardy violation, like a *Doyle* violation, is fundamental error and so is not waived by a defendant's failure to present it on direct appeal. *See, e.g., Grafe v. State,* 686 N.E.2d 890, 892–93 (Ind.Ct.App.1997), where we determined that a petitioner who had been denied post-conviction relief did not waive his double jeopardy claim by failure to present it on direct appeal because a double jeopardy violation is fundamental error.

For purposes of double jeopardy, two offenses are the same when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact. *Cossel v. State,* 675 N.E.2d 355, 362 (Ind.Ct.App.1996). Our analysis must include not only an evaluation and comparison of the statutory provisions, but must examine the factual bases contained in the information or indictment. *Id.*

Where the crime of rape is charged as forcible rape, it necessarily includes the crime of confinement to the extent force, or threat of force, effectuates the rape. *Webster v. State,* 628 N.E.2d 1212, 1214 (Ind. 1994). As a result, we must look to the facts of the case and the factual bases contained in the information to determine whether a separate confinement occurred. *Wethington v. State,* 560 N.E.2d 496, 508 (Ind.1990). A separate violation of the confinement statute will be found where any other confinement of the victim beyond that inherent in the force used to effectuate the rape exists. *Id.*

In *Cossel,* 675 N.E.2d at 362, also a rape and confinement case, there was found to be no double jeopardy violation where "the evidence presented at trial shows that after Cossel had finished having sexual intercourse with K.D., he turned her onto her back. Record at 415. A pillow covered K.D.'s face and Cossel began 'jabbing' K.D. with his knife. Record at 415. He then threatened K.D. and warned her not to tell her husband or call the police because he would kill her. Record at 415. Cossel also told K.D. that he would come back and 'shoot your little boy laying there next to you.' Record at 415."

That is not the case here. Taylor's confinement of his victim was limited to the circumstances surrounding the other crime charged. The record reflects that after the rape, Taylor got up and asked the victim if she had any money, and she tried to hand him a jar of pennies, which he would not take. R. 198. She then testified that he got the knife out and said "I'm sorry", at which point she stated that "he didn't have to do that, that I wouldn't call the police, I had a police record, and it wouldn't do anything but get me in trouble." R. 243. The following testimony was then elicited:

Q. So what did he do with the knife then?

A. Then that's when he turned around and walked towards the living room.

Q. Where were you?

A. Following behind him.

Q. Did he just keep walking toward ... into the living room?

A. Yes.

Q. Didn't stop?

A. No. By the ... when he got to the living room he stopped.

Q. And, you just followed him out there, then, is that right?

A. Yes ...

Q. Were you still naked?

A. I can't recall. I think I threw my flannel shirt on.

\* \* \* \* \* \*

Q. And, when you got out to the living room, that's when he asked you about the Christmas presents, if you don't have any money, how could you have all these Christmas presents?

A. That's right.

\* \* \* \* \* \*

Q. Did he take [the presents]?

A. No. He just kind of looked around ... told me I'd better not be lying about calling the police.

\* \* \* \* \* \*

Q. So this fellow just raped you and, uh, asked for money, and, uh, you told him you had some ... he didn't take it ... and then, uh, he just said good-bye and left the apartment, ...

A. That's correct.

R. 243–246.

This evidence does not demonstrate confinement beyond that necessary to effectuate the rape, so Taylor was subjected to double jeopardy when he was convicted of both crimes. After the rape, Taylor's victim not only was apparently free to put on some clothing, but she also followed Taylor from the bedroom to the living room. This is insufficient evidence to support a separate confinement charge. Taylor was improperly convicted of both rape and confinement, and

his conviction of confinement must be vacated as a result.

### CONCLUSION

The references at trial to Taylor's post-arrest silence were reversible error, and Taylor was subjected to double jeopardy when he was charged with and convicted of confinement when the force used to confine his victim was coextensive with the force used to support the rape charge. His convictions are reversed and the cause is remanded.

DARDEN, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the rape and confinement convictions must be reversed.

The majority acknowledges that the two issues Taylor presents would normally be subject to waiver because Taylor failed to preserve them. The majority nevertheless addresses the issues on the merits on the ground that the errors were fundamental and not subject to waiver. I believe the majority applies the fundamental error doctrine too broadly in view of the fact that the errors are presented in a post-conviction proceeding.

In *Canaan v. State*, 683 N.E.2d 227 (Ind. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998), our supreme court indicated that the fundamental error doctrine is significantly narrowed when applied in the post-conviction setting, as reflected in the following:

Canaan seeks to avoid application of the waiver doctrine by arguing that it does not apply here because "these challenges ... raise fundamental issues." As such, he makes a bold assertion of the fundamental error doctrine. It is true that we have acknowledged an exception to the waiver rule in circumstances where the trial court committed "fundamental error." We view this exception as an extremely narrow one, available only "when the record reveals clearly blatant violations of basic and elementary principles [of due process], and

the harm or potential for harm cannot be denied." While concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objections rule *on direct appeal,* we think its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to those circumstances we set forth in *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985): "[D]eprivation of the Sixth Amendment right to effective assistance of counsel, or . . . an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal."

*Canaan v. State,* 683 N.E.2d at 235–36 n. 6. Pursuant to *Canaan,* the fundamental error doctrine can only be invoked in the post-conviction setting with respect to two types of claims: (1) claims of ineffective assistance of counsel, and (2) issues that were unavailable at the time of trial and direct appeal. I believe the majority errs in resolving this appeal from the denial of Taylor's PCR petition on grounds other than those identified in *Canaan.* It is clear to me that the issues Taylor raises were available at the time of trial and direct appeal. Therefore, the errors presented in Taylor's PCR petition must be analyzed in the context of his claims of ineffective assistance of counsel.

In the instant case, I believe that Taylor's PCR petition with respect to the rape conviction should be denied because he has failed to demonstrate that he received ineffective assistance of counsel regarding the alleged *Doyle* violations. Of the four instances of alleged *Doyle* violations, two were elicited by defense counsel's questioning of a witness. Such invited error is neither reversible error nor fundamental error. *See Kingery v. State,* 659 N.E.2d 490 (Ind.1995).

The third allegation of a *Doyle* violation occurred during the State's cross-examination of Taylor. Taylor was asked if he had told the investigating officer that the victim consented to engage in sexual intercourse. In my view, the immediate objection by defense counsel, followed by the trial court's instruction to disregard the question and admonishment that everyone has the right not to "discuss anything with the lieutenant or

anyone else," *Record* at 452, was sufficient to cure any error that may have occurred. *See Lay v. State,* 659 N.E.2d 1005 (Ind.1995). For purposes of the issue under consideration, trial counsel's performance in this matter cannot be characterized as inadequate. Neither can appellate counsel's failure to present the issue constitute ineffective assistance in view of the fact that the error, if any, was cured.

The fourth alleged *Doyle* violation occurred when the investigating officer was asked how his investigation would have differed if he believed the Taylor would assert a consent defense. He answered that he would have tried to ascertain the nature of the relationship between Taylor and the victim. The response arguably suggested that Taylor had not previously asserted the defense.

In order to succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard and that such performance was so deficient and prejudicial that the defendant was denied a fair trial, *i.e.,* a trial whose result was unreliable. *Bannowsky v. State,* 677 N.E.2d 1032 (Ind. 1997).

Even if the investigating officer's response constituted error, reversal is not warranted in the instant case. Unlike the majority, I view the evidence of guilt as more than merely sufficient, and certainly of such a character that I am convinced beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the comment. *Bevis v. State,* 614 N.E.2d 599 (Ind.Ct.App. 1993). Put another way, I believe that the result of the trial was not unreliable. Therefore, counsel did not render ineffective assistance in this regard.

Having found no ineffective assistance of counsel concerning the rape charge, I would affirm that conviction.

Turning now to the confinement conviction, the standard for reviewing a claim of ineffective assistance of appellate counsel is the same as that used in reviewing the adequacy of trial counsel's representation. *Lowery v. State,* 640 N.E.2d 1031 (Ind.1994), *cert. de-*

*nied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). Appellate counsel's failure to present a double jeopardy challenge that would have succeeded constitutes ineffective assistance of counsel. *See Games v. State,* 684 N.E.2d 466 (Ind.1997), *modified on other grounds upon reh'g,* 690 N.E.2d 211.

I note first that we are foreclosed by *Games* from analyzing Taylor's double jeopardy claim under the Indiana Constitution. In *Games,* our supreme court clarified that, in order to properly present a separate double jeopardy claim arising under the Indiana Constitution, a defendant must do more than merely cite that provision and claim greater protection:

> In presenting the general claim that his sentences violate the double jeopardy provision of the Indiana and United States Constitutions, the defendant cites both constitutions. However, the defendant does not provide Indiana authority, and we find none from this Court, establishing an independent state double jeopardy protection based upon an analysis of the Indiana Constitution.... The defendant presents no argument urging that the Indiana Constitution provides double jeopardy protections different from those under the federal constitution.... Because the defendant fails to present an argument based upon a *separate analysis* of the Indiana Constitution, "we will only analyze this under federal double jeopardy standards."

*Games v. State,* 684 N.E.2d at 473 n. 7 (emphasis in original) (quoting *Gregory–Bey v. State,* 669 N.E.2d 154, 157 n. 8 (Ind.1996)).

In his double jeopardy argument pertaining to the Indiana Constitution, Taylor cites several decisions of this court that support his contention that the Indiana Constitution affords greater protection than its federal counterpart. He cites other decisions of this court, however, that disagree with the proposition he advances. Beyond said citation of authority, Taylor offers no separate analysis under the Indiana Constitution. My understanding of the *Games* decision leads me to conclude that the lack of a separate analysis of the Indiana constitutional provision in question prevents this court from even addressing the question in that context. *See*

*Valentin v. State,* 688 N.E.2d 412, 413 (Ind. 1997) ("[i]n the absence of any separate state constitutional law argument by defendant, the Court of Appeals should not have based its reversal of defendant's conspiracy conviction on the Indiana double jeopardy clause"). Therefore, we are constrained to address the double jeopardy question only in the context of the federal constitution, utilizing the analysis prescribed by the United States Supreme Court for challenges arising under the federal Double Jeopardy Clause.

In the instant case, Taylor was convicted of both rape and confinement. The majority states that the double jeopardy analysis focuses not only upon the statutes involved, but also upon "the factual bases contained in the information or indictment." *Op.* at 275. This is squarely at odds with our supreme court's observation that "the United States Supreme Court's 'same elements' test requires that we look only to the statutory elements of the offenses, not to the charging information, the jury instructions outlining the elements of the crime, or the underlying proof needed to establish the elements." *Games v. State,* 684 N.E.2d at 477. The proper analysis was set forth in *Games,* where our supreme court observed that the federal double jeopardy analysis focuses upon the statutory elements of the offenses charged and not on the facts that must be proven under the particular indictment at issue. *Id.* at 476 (citing *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).

Indiana's criminal confinement statute requires proof of nonconsensual substantial interference with a person's liberty, *see* IC § 35–42–4–1, while the rape statute requires proof of forced sexual intercourse with a member of the opposite sex. *See* IC § 35–42–3–3. It is clear that each requires proof of an additional fact with the other does not: criminal confinement requires a knowing or intentional interference with liberty; rape requires knowing or intentional forced sexual intercourse. Accordingly, Taylor's conviction of both offenses did not violate the Double Jeopardy Clause of the United States Constitution. It follows that appellate counsel's failure to raise the issue did not prejudice

Taylor and his claim of ineffective assistance of counsel in that regard thereby fails.

Having found no ineffective assistance of counsel on either the alleged *Doyle* violations or the double jeopardy question, I would affirm the denial of Taylor's petition for post-conviction relief.